# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Kevin Snodgrass Jr., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 1:23cv312 (LMB/IDD) |
| ) | |
| K. Richardson, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the Court upon a partial Motion to Dismiss ("Motion") [Dkt. No. 10] filed by defendants Beth Cabell, T. Darden, Leslie J. Fleming, K. Richardson, K. Williams, J.M. Branch, T. Williams, and Barbra Spring (collectively "defendants") in this civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner Kevin Snodgrass ("plaintiff"), who is proceeding pro se. Plaintiff alleges in his Complaint that defendants violated his rights by conducting classification hearings in his absence, miscalculating his good time credits, improperly holding him in the Restricted Housing Unit of Sussex II State Prison ("SIISP"), requiring him to participate in the "Step-Down Program," and violating his right to due process regarding two disciplinary charges. [Dkt. No. 1]. Plaintiff seeks declaratory, injunctive, and monetary relief for these alleged wrongs. Id. at 18-19. In response to the Complaint, defendants filed their Motion, arguing that defendants Cabell, Darden, and Fleming should be dismissed from this action and that some of plaintiff's claims against defendants Richardson, K. Williams, Branch, T. Williams, and Spring should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. Nos. 10-11]. Plaintiff has opposed the Motion. See [Dkt. No. 27].

As to the claims for which they do not seek dismissal, defendants have filed an Answer, in which they have advised the Court of ongoing class-action litigation in which plaintiff is a

named plaintiff. See [Dkt. No. 12] at n.1 (describing Thorpe v. Virginia Dep't of Corrs., et al., No. 2:20cv7 (W.D. Va.)). The plaintiffs in the class-action challenge the "Step-Down Program" of the Virginia Department of Corrections ("VDOC"), which is also a subject of this action. See [Dkt. No. 12] at 1; [Dkt. No. 1] at 13-14. Defendants suggest that it may be "appropriate to stay further proceedings on this matter's claims pending the outcome" of the ongoing class-action litigation. Id.

For the reasons explained below, defendants' Motion to Dismiss will be granted in part and denied in part, and the action will be stayed pending resolution of the Thorpe litigation.

**I. Background**

Although it is clear that the allegations in the Complaint all stem from disciplinary charges against plaintiff, the Complaint is difficult to understand because it does not present the factual allegations in chronological order and appears to describe several overlapping narratives involving plaintiff's multiple disciplinary proceedings, his placement in restricted housing, his efforts to file grievances and appeals regarding his housing classification and disciplinary hearings, and changes made to his security level following his conviction for disciplinary infractions. Each issue will be discussed separately.

A.  *Plaintiff's Disciplinary and Classification Hearings*

The Complaint alleges that, on January 19, 2022, officers at SIISP conducted searches of several cells, including plaintiff's. [Dkt. No. 1] at 4. During the search of plaintiff's cell, Officer Turner "recovered a black TCL phone" and provided it to Investigator Dunlevy. Id. On January 20, 2022, plaintiff was served with a disciplinary charge for being in an unauthorized area, a "229" charge, and "[t]he hearing was scheduled for (1-27-22) but was never conducted." Id. "[O]n or about (1-25-22)," plaintiff was placed in the restricted housing unit (or "RHU"). Id. at

2

8. On February 3, 2022, plaintiff received a "Notice of Postponement" indicating that a hearing on plaintiff's charge for possession of the cell phone, a "131" charge, was scheduled for February 7. Id. at 4.

On the day of plaintiff's hearing for the 131 charge, Officer Starkey was appointed as plaintiff's advisor for the proceeding. Id. At the outset of the hearing, plaintiff stated that he had never received a copy of his disciplinary charge and penalty offer, nor had he been offered a chance to present evidence on his own behalf. Id. at 5. Defendant Richardson allegedly "ignored these facts" and began to conduct the hearing anyway. Id. When plaintiff expressed his desire to question Officer Turner—as he asserts was his right under VDOC policy—Richardson paused the hearing "to locate ... Turner." Id. After a 15 minute recess, and the Reporting Officer stating that the witness had not been located, Richardson restarted the hearing, declared that Turner's testimony was not relevant, and denied plaintiff's request to view relevant video evidence. Id. Richardson found plaintiff guilty of the 131 charge, which caused plaintiff's good time score to be increased from II to IV, meaning that plaintiff could no longer earn credits for early release. Id. at 5-6.

On February 13, 2022, after his hearing on the charge related to the phone, plaintiff learned that he "ha[d] been reviewed by the Multi-Disciplinary Team" on February 1, 2022, and that the team had "determined [plaintiff would] remain in RHU pending outcome of an investigation." Id. at 6-7. Defendants Spring and T. Williams allegedly "approved" the decision to hold plaintiff in the RHU while he was under investigation. Id. at 7. Plaintiff claims that he should have been—but was not—permitted to attend this classification review. Id. He alleges "[u]pon information and belief" that Richardson, Spring, K. Williams, and T. Williams "all conspired with one-another to keep plaintiff housed in segregaton under RHU status under

3

investigation [without] any proof of documentation to support this accusation." Id. Plaintiff points to the issuance of two "DOC-11H forms" on February 12, 2022 as evidence of this alleged conspiracy.

### B. *Plaintiff's Efforts to Grieve Absence from Classification Hearing*

On February 15, 2022, plaintiff drafted and submitted a complaint regarding "a total of (6) violations" of his due process rights, including his absence from the classification hearing at which officials decided to place him in restricted housing. Id. at 8. Defendant Richardson allegedly "intercepted" the complaint and responded, "You can exercise your alleged findings on the appeal process." Id. at 9. Plaintiff claims Richardson was acting in a retaliatory fashion because plaintiff had, on an unstated date, told him that he was "going to sue [Richardson's] ass in court." Id.

On February 22, 2022, plaintiff filed a regular grievance in response to defendant Richardson's denial of his informal complaint. Id. Defendant Darden denied the grievance on March 1, 2022, stating that plaintiff's rights had not been violated and that COVID-19 had prevented plaintiff's classification hearing from occurring in person. Id. Defendant Fleming upheld Darden's decision on March 20, 2022. Id.

### C. *Plaintiff's Appeal of his Disciplinary Conviction for Phone Possession (131 Charge)*

On February 14, 2022, plaintiff "wrote a request form to Ms. Seeley requesting an "Appeal Packet," because "it had been a week [since his disciplinary conviction] and one wasn't delivered." Id. at 9. Plaintiff received an appeal packet on February 22, 2022. Id. at 10. He submitted his appeal on "Tuesday night" and raised two issues: that he had not received a copy of his disciplinary charge form and that he was denied his right to question a witness at the

4

February 7, 2022 hearing. Id. The Friday after plaintiff submitted his appeal, he was transferred from SIISP to Sussex I State Prison ("SISP"). Id.

On an unspecified date after his transfer, plaintiff "submitted a request form to Warden Cabell regarding his Level-1 Appeal status." Id. On April 21, 2022, an individual named Ms. Vandermark responded, stating, "No appeal has been received for your (131) charge." Id. Plaintiff filed a grievance about this issue on May 4, 2022, indicating that he had, in fact, filed an appeal but had not yet received a response. Id. On May 12, "R. Langford improperly logged the Grievance as 'non-grievable' on the 'Intake Decision' and claims that their [sic] wasn't supporting documentation attached to the Grievance upon submitting the Level-1 Review." Id. On May 13, 2022, plaintiff appealed Langford's intake decision, but plaintiff's appeal "was sent back [without] a response from the Level II Ombudsman, Regional." Id. at 10-11.

### D.   *Plaintiff's Security and Good Time Levels and the VDOC's Step-Down Program*

The final portion of the Complaint is particularly hard to understand. It appears to allege that, on February 22, 2022, defendant K. Williams "deliberately miscalculated plaintiff's GCA points to have his security level points boosted to (36) pts Level-5." Id. at 11. It appears that plaintiff alleges that, in calculating his good-time credits accumulated ("GCA"), K. Williams ignored VDOC policy that inmates should be given full credit for rehabilitative programs in which they enrolled but which had been paused due to COVID-19. Id. Plaintiff spoke to K. Williams about this issue, and K. Williams responded that"[i]f [plaintiff] had stopped writing shit up, things could've been different." Id. Plaintiff responded that it was his right under the First Amendment to raise issues regarding his imprisonment, in response to which K. Williams allegedly said, "You see where that got yo [sic] ass." Id.

5

On February 24, 2022, defendant Branch "deliberately conducted an ICA review [without] plaintiff receiving a 'Notification Form,' nor 'Being Present' at the Hearing." Id. at 12. Branch allegedly made and approved his own recommendation for plaintiff to be transferred to "a Security Level 5 [without] due process." Id. Only days later, plaintiff was transferred to SISP, where he appealed Branch's "unconstitutional recommendations of Boosted Security Level points, Denial of 'Good-Time Credits Accumulated.'" Id. at 12. Defendants T. Williams and Fleming denied plaintiff's appeals "[without] any justifiable reasoning." Id.

Plaintiff "asserts that during the time he was confined in RHU, he was forced to enroll in the Step-Down Program. The Step-Down program was <u>NEVER</u> provided to him!" Id. at 12 (emphasis in the original). Plaintiff explains that the Step-Down Program ostensibly encourages good behavior from inmates to "progress ... back to General Population" by offering incentives such as "commissary food orders . . .T.V. and other electronics . . . access to the kiosk to download music and send emails/etc," but that, in practice, officials "refuse to provide offenders with any of the incentives that the policy" describes and use the program to "justify keeping ... offenders confined in segregation." Id. at 14.

As a result of his time in the RHU, plaintiff suffers "anxiety, depression, mind grains [sic]," and a desire to harm himself. Id. at 14-15.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

### III. Analysis

Defendants construe plaintiff's Complaint as raising the following claims (the portions to which defendants have filed a Partial Answer are indicated in bold):[1]

1. On or about February 7 or 8, 2022, defendant Richardson found plaintiff guilty of a disciplinary charge in violation of the **Fourteenth Amendment**, VDOC policy, and Virginia law. [Dkt. No. 1] at ¶¶ 21-26, 80.

2. Defendant K. Williams violated plaintiff's rights under the **First, Eighth, and Fourteenth Amendments**, as well as VDOC policies and Virginia law, by depriving plaintiff of a protected liberty interest due to her involvement at plaintiff's ICA hearings and by miscalculating plaintiff's good time level. Id. at ¶¶ 27-29, 33, 56-58, 79.

3. Defendant Spring violated plaintiff's rights under the **Eighth and Fourteenth** Amendments, as well as Virginia law, by depriving plaintiff of a protected liberty interest without due process when she reviewed and approved plaintiff's ICA Hearing recommendations on or about February 2, 2022. Id. at ¶¶ 29, 81.

4. Defendant T. Williams violated plaintiff's rights under the **Eighth and Fourteenth** Amendments, as well as Virginia law, by depriving plaintiff of a protected liberty interest without due process when she reviewed and approved plaintiff's ICA Hearing recommendations on or about February 3 and 10, 2022. Id. at ¶¶ 30, 35, 81.

5. Defendants Richardson, Spring, K. Williams, and T. Williams conspired to violate plaintiff's constitutional rights. Id. at ¶¶ 31, 33.

6. Defendant Branch violated plaintiff's rights under the First, **Eighth, and Fourteenth** Amendments, as well as Virginia law, when he reviewed plaintiff's status and made recommendations regarding plaintiff's ICA Hearing on or about February 8 and 24, 2023. Id. at ¶¶ 34, 61-63, 79.

---

[1] Plaintiff does not oppose this construction, which aligns with the Court's reading of the Complaint.

7

7. Defendant Richardson violated plaintiff's rights under the **First**, Sixth, Eighth, and Fourteenth Amendments, as well as Virginia law, by failing to address a complaint plaintiff submitted on or about February 15, 2022. Id. at ¶¶ 38-40, 80.

8. Defendant Darden violated plaintiff's rights under the Eighth and Fourteenth Amendments, as well as Virginia law, when she failed to properly address a grievance plaintiff had filed. Id. at ¶¶ 42, 81.

9. Defendant Fleming violated plaintiff's rights under the Eighth and Fourteenth Amendments, as well as Virginia law, by failing to address plaintiff's grievance appeals. Id. at ¶¶ 43, 65, 81.

10. Defendant Cabell violated plaintiff's rights under the Eighth and Fourteenth Amendments, as well as Virginia law, by failing to address a request form plaintiff had filed. Id. at ¶¶ 52, 82.

11. Defendant T. Williams violated plaintiff's rights under the Fourteenth Amendment and violated VDOC policies when she failed to properly address a grievance plaintiff had filed. Id. at ¶ 64.

12. Defendants Cabell, Branch, Spring, and T. Williams violated plaintiff's rights under the Eighth Amendment by being deliberately indifferent to plaintiff's notifications that he was receiving inadequate time out of his cell. Id. at ¶¶ 70.

13. Each named defendant violated plaintiff's rights under a theory of supervisory liability. Id. at 79-82.

14. Each named defendant violated plaintiff's Fifth Amendment rights. Id. at ¶¶ 25, 79-82.

[Dkt. No. 11] at 2-4.

Defendants Richardson, K. Williams, Branch, Spring, and T. Williams move to dismiss the portions of Claims 1 through 4, 6 and 7 that plaintiff asserts under Virginia law and VDOC policy; Claim 5 in its entirety; the portion of Claim 6 brought under the First Amendment; the portion of Claim 7 brought under the Sixth, Eight, and Fourteenth Amendments; and Claim 11 in its entirety. Defendants Cabell, Darden, and Fleming move to dismiss Claims 8 through 10 in their entirety, while defendants Cabell, Branch, Spring, and T. Williams move to dismiss Claim 12 in its entirety, and all defendants move to dismiss Claims 13 and 14 in their entirety.

For the reasons explained below, defendants' Motion will be granted in part and denied in part. Defendants Cabell, Darden, and Fleming will be dismissed from this action, and this action will proceed on only those claims to which the other defendants have filed a Partial Answer and the claims brought under Article I, § 12 of the Virginia Constitution that are coextensive with plaintiff's First Amendment claims against Richardson and K. Williams. The surviving claims will be stayed pending the resolution of Thorpe v. Virginia Dep't of Corrs., et al., No. 2:20cv7 (W.D. Va.).

### A. Claim 5

In Claim 5, plaintiff asserts that defendants Richardson, Spring, K. Williams, and T. Williams conspired to "keep [him] housed in segregation under RHU status under investigation." [Dkt. No. 1] at ¶ 31. He alleges that the only documentation that he received indicating that he was under investigation was the disciplinary charge related to his possession of a cell phone (the 131 charge), "which stated the INVESTIGATION was completed on (1-25-22)." Id. at ¶ 32. Because he was held in segregation after January 25, 2022, plaintiff appears to conclude that the defendants engaged in a conspiracy. Id. He also asserts that the issuance of two DOC-11H forms on the same day is proof of a conspiracy. Id. at ¶ 33.

To state a civil conspiracy claim actionable under § 1983, a complaint must allege that a group of defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in deprivation of the plaintiff's federal rights. Glassman v. Arlington Cnty., Va., 628 F.3d 140, 150 (4th Cir. 2010) (quoting Hinkle v. City of Clarksburg, 81 F.3d 16, 421 (4th Cir. 1996)). "Where [a] complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the

9

defendants, the court may properly dismiss the [conspiracy claim]." Brown v. Angelone, 938 F. Supp. 340, 346 (W.D. Va. 1996).

Here, the Complaint offers only a conclusory allegation that defendants Richardson, Spring, K. Williams, and T. Williams engaged in a conspiracy to violate plaintiff's rights. The claim is completely unsupported by specific factual allegations that could allow the Court to infer that these defendants had any "meeting of the minds" with respect to maintaining plaintiff's assignment in segregated housing. Accordingly, Claim 5 will be dismissed. Cf. Ruttenberg v. Jones, 283 F. App'x 121, 131-32 (4th Cir. 2008) (affirming dismissal of conspiracy claim where plaintiffs failed to plead facts that would "reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try and accomplish a common and unlawful plan," concluding that "conclusory allegations of conspiracy" were insufficient).

B.   **Portion of Claim 6 – alleging First Amendment Violation**

In Claim 6, plaintiff alleges that on February 24, 2022, defendant Branch "deliberately conducted an ICA Review w/o plaintiff receiving a 'Notification Form,' nor 'Being present' at the hearing . . . . Plaintiff asserts that this was done in 'Retaliation' upon Information & Belief." [Dkt. No. 1] at ¶ 61. "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (cleaned up). Even assuming that the allegations in the Complaint satisfy the first two elements, it does not allege any facts to suggest a causal relationship between any First Amendment activity by plaintiff and Branch's actions with regard to the February 24, 2022 ICA Review. In his Opposition, plaintiff incorrectly asserts that he does not have to allege such facts,

because "once [he] enters [a grievance] under the 1st amendment, any adverse action that takes place afterward is a clear violation of State and U.S. Constitution." [Dkt. No. 27] at 2. Plaintiff misstates the law in his opposition, and his Complaint contains only a conclusory statement, based on "Information & Belief" that Branch retaliated against him. Because this "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," is insufficient to withstand defendants' Motion, plaintiff's First Amendment claim against Branch will be dismissed. Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 570).

C.  **Portions of Claims 7, 8, 9, 10, 11 – alleging Eighth and Fourteenth Amendment, Violations Related to Institutional Responses to Grievances and Appeals**

Plaintiff claims that, in his absence, SIISP's classification board held a meeting on February 1, 2022, at which it determined that plaintiff would be held in restricted housing "pending [the] outcome of an investigation." [Dkt. No. 1] at 6-7. Plaintiff alleges that he received two "DOC-11H" forms, both of which were generated by K. Williams on February 12, 2022, and that each included a decision of the classification board. Id. at ¶¶ 28 and 33. The second form referred to both of plaintiff's disciplinary charges, the 131 charge for possession of a cell phone and the 229 charge for being in an unauthorized location. Id. at ¶ 33.

In Claim 7, the Complaint alleges that plaintiff filed a grievance on February 15, 2022, "addressed to Mr. McDonald," which Richardson "intercepted," informing plaintiff that he could address his concerns "on the appeal process." Id. at 8-9. The factual basis of Claim 8 is that, after Richardson denied plaintiff's February 15 grievance, defendant Darden denied plaintiff's appeal, asserting that plaintiff's rights had not been violated and that plaintiff had not been permitted to attend the hearing "due to COVID" and a resultant ban on "face-to-face meetings." Id. at 9. Finally, Claim 9 alleges that Fleming, a Regional Administrator for the VDOC, upheld

11

Richardson and Darden's decisions on the "assumption that plaintiff [had been] released [from the restricted housing unit] back to general population." Id. at 9.

Claim 10 alleges that on an unstated date after plaintiff's February 25, 2022 transfer from Sussex II State Prison to Sussex I State Prison, plaintiff submitted a request form to Cabell inquiring as to the status of his appeal challenging his February 8, 2022 disciplinary conviction. Id. at 10. An individual named "Ms. Vandermark" allegedly responded, stating, "No appeal has been received for your (131) charge." Id.

Finally, Claim 11 is based on defendant T. Williams's alleged denial of an appeal plaintiff filed regarding a February 24, 2022 classification review he claims occurred outside of his presence or awareness. Id. at 12. T. Williams's reasoning for denying the appeal, according to plaintiff, "was contradictory to the Rules & Regulations of VA DOC (OP) 830.3; 830.1, and 830.2." Id. In her response, defendant T. Williams also allegedly stated that "CCS agreed to have [plaintiff] shipped/transferred to Red Onion or Wallens Ridge State Prison."[2] Id.

Defendants Richardson, Darden, Fleming, Cabell, and T. Williams correctly argue that plaintiff's allegations are insufficient to support a claim for relief under either the Eighth or Fourteenth Amendments. Indeed, none of these allegations suggest that the defendants had any direct, personal role in subjecting plaintiff to conditions he contends were unconstitutional. Rather, the allegations merely relate to the defendants' responses to plaintiff's inquiries and complaints about the proceedings that led to him being assigned to restricted housing. Consequently, the defendants cannot be held directly liable for an alleged Eighth Amendment violation. See Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally"

---

[2] The meaning of CCS is not explained in the Complaint nor known to the Court.

in the violation of the plaintiff's rights and affirming dismissal of claim unsupported by allegations of defendant's direct involvement in claimed constitutional violation) (quotation omitted).

Moreover, defendants cannot be held liable on the basis of their responses to plaintiff's institutional grievances and appeals because inmates do not have any "constitutional right to participate in grievance proceedings." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Although a prison official with the power to remedy an ongoing issue about which he is notified through a grievance potentially could be liable for his failure to act, see Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985), that official's mere denial of a grievance related to some past alleged wrong cannot support a claim. See Atkins v. Maryland Div. of Corr., No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) ("The mere fact that [a warden] denied [the plaintiff's] grievances does not alone impose liability."); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

Here, defendants Darden, Fleming, Cabell, T. Williams, and Richardson (with regard to the portion of Claim 7 that Richardson has moved to dismiss) are alleged to have merely denied plaintiff's grievances about classification and disciplinary hearings that had already occurred. Although the Complaint appears to allege that some of these defendants relied on incorrect information, allegations that defendants mistakenly denied plaintiff's grievances do not support any claim. Cf. Washington v. McAuliffe, No. 7:16-cv-476, 2018 WL 401903 (W.D. Va. Jan. 12, 2018) (finding that defendants' denials of plaintiff's grievances did not entitle plaintiff to relief and that even negligent investigation of a grievance is "not sufficient" to support an actionable

13

claim). Accordingly, plaintiff's Eighth and Fourteenth Amendment claims based on the defendants' responses to his grievances will be dismissed.

### D.  Portion of Claim 7 – alleging violation of the Sixth Amendment

A portion of Claim 7 invokes the Sixth Amendment. This Amendment has no relevance to plaintiff's claims because it applies only to criminal prosecutions, see U.S. Const. amend. VI, and "[p]rison disciplinary proceedings are not criminal proceedings." Baxter v. Palmigiano, 425 U.S. 308, 316 (1976). Accordingly, the portion of Claim 7 invoking the Sixth Amendment will be dismissed.

### E.  Claim 12

Claim 12 seeks relief under the Eighth Amendment for the alleged failures of defendants Cabell, Branch, Spring, and T. Williams to respond to plaintiff's assertion that he did not receive adequate outdoor recreation while housed in the RHU. [Dkt. No. 1] at 13. The Complaint alleges that these defendants "all were notified [regarding his denial of recreation time] on numerous occasions! In violation of the 8th Amendment." Id. This allegation does not include the specific dates, times, or manner in which plaintiff allegedly informed the defendants that he was not receiving adequate recreation time. It is thus too vague to allow for an inference that defendants Cabell, Branch, Spring, or T. Williams had adequate knowledge of plaintiff's circumstances such that their failure to act could be the basis of liability. Cf. Davis v. Gosnell, No. 3:19-cv-689-MR, 2021 WL 1428478, at *3 (W.D.N.C. Apr. 15, 2021) (finding a prisoner-plaintiff's complaint "too vague and conclusory to state a deliberate indifference claim" where it failed to identify "how [the defendants] knew, or why they should have known, that he was experiencing serious medical or mental health needs"). Moreover, the Complaint does not allege

14

that these defendants took action to deprive plaintiff of his recreation time. For these reasons, Claim 12 will be dismissed.

**F.     Claim 13**

The Complaint asserts supervisory liability claims against each defendant but fails to identify any specific factual basis to support those claims. Defendants have offered four pages of argument seeking dismissal of Claim 13 and have identified many possible factual bases for the claim as to each defendant. See [Dkt. No. 11] at 14-18. In his Opposition to the Motion to Dismiss, plaintiff identifies only one factual basis for relief: that "Defendants Darden, Fleming, and Cabell," whom plaintiff calls "the Supervisors," "elected not to act and correct [defendant Richardson's] errors" with respect to plaintiff's disciplinary hearing, which led to a change in plaintiff's good time level. [Dkt. No. 27] at 4.

As an initial matter, by failing to respond to all but one of the defendants' arguments for dismissal, plaintiff has waived the uncontested grounds.[3] See, e.g., J & P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co., No. 2:11CV37, 2012 WL 925015, at *3 (W.D.N.C. Mar. 19, 2012) (finding plaintiffs waived opposition to dismissal of claims by failing to respond to arguments raised in defendant's motion to dismiss); In re Campbell Soup Co. Sec. Litig., No. 18-14385 (NLH/JS), 2020 WL 7022655, at *5 n.2 (D.N.J. Nov. 30, 2020) ("Plaintiffs did not respond to this argument in their opposition and thus have waived this theory.").

---

[3] Plaintiff's Opposition is, at points, difficult to understand and sometimes conflates legal theories; however, plaintiff clearly distinguishes between what he feels is a basis for a retaliation claim (and cites to the relevant precedent of Martin v. Duffy, 977 F.3d 294 (4th Cir. 2020)), and what he believes to be a supervisory liability claim (where he uses relevant legal phrasing regarding "the Supervisors [failing] to act and correct [] errors"). See [Dkt. No. 27] at 4. Thus, the Court believes plaintiff intentionally addressed only one alleged factual basis for a supervisory liability claim.

15

The Court has already addressed plaintiff's sole remaining theory in Claims 8, 9, and 10 and found that defendants Darden, Fleming, and Cabell's failures to find in plaintiff's favor as to grievance appeals did amount to direct constitutional violations. Defendants' decisions also do not support any claim under a supervisory liability theory. To state such a claim, a complaint must allege facts that demonstrate (1) that the supervisor knew his or her subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) that the supervisor's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted).

Here, the Complaint does not establish that Cabell ever received any documentation from plaintiff. Rather, it claims that the request form plaintiff sent after his transfer to SISP was received and responded to by "Ms. Vandermark." [Dkt. No. 1] at 10. Cabell cannot have had knowledge of any potential constitutional violations or have been deliberately indifferent to any such violations if she did not receive notice of them from plaintiff. Thus, this claim fails with respect to defendant Cabell.

As for defendant Fleming, the Complaint merely indicates that Fleming wrongly understood plaintiff's housing assignment to have been resolved by the time she received plaintiff's appeal of a grievance denial. See id. at 9 ("Fleming ... DENIED my appeal under the assumption that plaintiff was released back to General Population."). Given that statement, because there is no basis on which to find that defendant Fleming showed any deliberate indifference to plaintiff's conditions, the supervisory liability claim raised against her also fails.

16

Finally, the Complaint alleges that, on March 1, 2022, defendant Darden denied plaintiff's appeal of a grievance submitted to defendant Richardson. [Dkt. No. 1] at 9. But by this time, plaintiff had been transferred from SIISP to SISP, and Darden's response to plaintiff's appeal—whether legally correct or incorrect—therefore had no "affirmative causal link" to plaintiff's restricted housing assignment at SIISP. For these reasons, Claim 13 will be dismissed.

G. <u>Claim 14</u>

In Claim 14, plaintiff seeks relief under the Fifth Amendment. See [Dkt. No. 1] at 16. Although the Complaint is not clear, it appears that plaintiff's proposed Fifth Amendment claim would be based on a due process theory. Whatever plaintiff's proposed theory, the Fifth Amendment is inapplicable to this action because it applies only to the actions of federal government officials, and no federal officials are named as defendants in this action. Rather, plaintiff seeks relief from state actors, who are subject to the Fourteenth Amendment. See <u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law.") (citation and internal quotation omitted). For this reason, Claim 14 will be dismissed.

H. <u>Portions of Claims 1-4 and 7-11 – Virginia State Law</u>

Plaintiff alleges that each of the defendants violated his rights under Virginia law. The Complaint specifically identifies Sections 8, 9, 11, and 12 of Article I of the Virginia Constitution and suggests that defendants also committed state tort violations and violated VDOC policies. See [Dkt. No. 1] at 15-16. Defendants seek dismissal of all Virginia state law claims found in Claims 1 through 4 and 7 through 11.

To the extent plaintiff is seeking relief through the Virginia Tort Claims Act ("VTCA") for alleged tortious conduct of the defendants, any such claim is barred by the doctrine of sovereign immunity. Indeed, in enacting the VTCA, the Commonwealth of Virginia allowed itself to be sued for tort claims filed in state courts, but it did not waive its Eleventh Amendment immunity or consent to be sued in federal court. McConnell v. Adams, 829 F.2d 1319, 1329 (4th Cir. 1987); Creed v. Virginia, 596 F. Supp. 2d 930, 938 (E.D. Va. 2009).

Next, to the extent plaintiff seeks relief for alleged violations of VDOC policy, there is no constitutional claim available to him. See Brown, 938 F. Supp. at 344 ("[A] state's failure to abide by its own law as to procedural protections is not a federal due process issue.") (citing Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue)).

Finally, with the exception of Section 12, the provisions of Article I of the Virginia constitution plaintiff cites cannot be the basis for relief. First, Section 8 is related to criminal prosecutions, see Va. Const. Art. 1, § 8, and is therefore irrelevant to this action because plaintiff does not challenge any criminal prosecution but instead challenges internal disciplinary proceedings conducted by VDOC officials. Next, Section 9 is not self-executing and therefore does not provide plaintiff a cause of action. See, e.g., Delk v. Moran, No. 7:16cv554, 2019 WL 1370880, at *4 (W.D. Va. Mar. 26, 2019); Quigley v. McCabe, No. 2:17cv70, 2017 WL 3821806, at *5 (E.D. Va. Aug. 30, 2017). As for Section 11, this provision is self-executing only in the context of claims for damages to, or takings of, property, which is not at issue in this action. See Doe v. Rector of George Mason Univ., 132 F. Supp. 3d 712 (E.D. Va. 2015). Section 12 is self-executing. See Delk v. Moran, No. 7:16cv554, 2019 WL 1370880, at *5

18

(W.D. Va. Mar. 26, 2019) (describing Section 12 as self-executing and stating that "the freedom of speech guaranteed by Article I, § 12 of the Constitution of Virginia is co-extensive with the protections guaranteed by the First Amendment of the Constitution of the United States").

For these reasons, the only Virginia state law claims that may proceed are those raised under Article I, § 12 against Richardson and K. Williams that are coextensive with the First Amendment claims in Claims 2 and 7.

### I.     **Official Capacity Claims**

Finally, defendants correctly observe that, to the extent plaintiff seeks to obtain monetary damages from them in their official capacities, such claims are not cognizable and must be dismissed. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

### IV. Ongoing Litigation About the VDOC's Step-Down Program

As described above, the United States District Court for the Western District of Virginia is currently considering opposing motions for summary judgment in Thorpe v. Virginia Dep't of Corrs., et al., No. 2:20cv7 (W.D. Va.). The plaintiffs in that action—a group that includes this plaintiff—seek abolishment of the Step-Down Program, appointment of a special master to inspect long-term confinement housing in VDOC facilities, and provision of compensatory damages to members of the plaintiff class. Id., [Dkt. No. 1] at 96-97.

In light of the ongoing litigation in the Western District, counsel for defendants suggests that a temporary stay of this action may be appropriate. See [Dkt. No. 12] at 1, n.1. "It is well settled that the decision to stay [an] action is entirely within the discretion of the Court." Actelion Pharms. Ltd. v. Lee, No. 1:15-cv-1266, 2016 WL 205377, at *4 (E.D. Va. Jan. 13, 2016). "[A] district court [considering staying an action] should consider three factors: (1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not

stayed; (3) potential prejudice to the non-moving party." Fisher v. United States, No. 3:13-MC-08, 2013 WL 6074076, at *4 (E.D. Va. Nov. 18, 2013).

There are obvious overlapping issues of law and fact between the remaining issues in this action and Thorpe. Thus, staying this action would likely result in the preservation of judicial resources because it would avoid duplicative litigation. This is particularly so because the parties in Thorpe have already expended significant resources and compiled extensive factual records. Additionally, it seems almost certain that a decision will issue in Thorpe before one could reasonably be entered here. On this basis, there is no obvious hardship that plaintiff would face from temporarily staying this action. By contrast, the Court recognizes the potential hardship to be faced by defendants, whose resources could be avoidably wasted if a stay is not issued here.

For these reasons, the Court will enter a stay until the resolution of the pending motions for summary judgment in Thorpe.

## V. Conclusion

For the reasons stated above, defendants' Motion to Dismiss will be granted in part and denied in part by an Order that will accompany this Memorandum Opinion. Due to the ongoing and overlapping litigation occurring in the United States District Court for the Western District of Virginia, see Thorpe v. Virginia Dep't of Corrs., et al., No. 2:20cv7 (W.D. Va.), the remaining issues in this civil action will be stayed.

Entered this 25th day of March 2024.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge